Tina M. Alleguez          (SBN 136562)
Teresa M. Wainman      (SBN 143825)
MICHELMAN & ROBINSON, LLP
15760 Ventura Blvd., 5th Floor
Encino, CA 91436
Tel:   (818) 783-5530
Fax:  (818) 783-5507

Attorneys for Plaintiff, CURTIS CORUM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CURTIS CORUM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PFF BANCORP, INC., a/k/a PFF BANK & TRUST, a Delaware corporation doing business in California; U.S. BANK, N.A., a Minnesota corporation doing business in California; FCI LENDER SERVICES, INC., a California; TRAVIATA LENDING, a Business Entity, form unknown; SOUTHLAND TITLE, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Business Entity, form unknown; and DOES 1-100 inclusive,<br><br>Defendants. | CASE NO. EDCV 09-2272-JVS (DTBx)<br><br>[First Amended Complaint Filed: November 4, 2009]<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>**Date:  February 8, 2010**<br>**Time: 1:30 p.m.**<br>**Court Room: 10C**<br><br>[Filed concurrently with Plaintiff's Ex Parte Application for Preliminary Injunction and Proposed Order thereon] |

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

#196899

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 8, 2010 at 1:30 p.m., or as soon thereafter as counsel may be heard in Court Room 10C of the above-entitled Court, located at 411 W. Fourth Street, Santa Ana, California, 92701, pursuant to Federal Rule of Evidence 201 Plaintiff CURTIS CORUM ("Plaintiff") will, and hereby does, move this Court, to take judicial notice of the documents attached to this Request for Judicial Notice ("RJN") as Exhibit 1-2.

Exhibit 1: Plaintiff's First Amended Complaint, San Bernardino County Superior Court. Case No. CIVMS 900845, Curtis Corum v. PFF Bancorp, Inc., et al., filed November 4, 2009;

Exhibit 2: Order Re Temporary Restraining Order and OSC Re Preliminary Injunction filed on November 25, 2009.

This RJN is based on the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

Dated: January 19, 2010        MICHELMAN & ROBINSON, LLP

By: _____
        Tina M. Alleguez, Esq.
        Teresa M. Wainman, Esq.
        Attorneys for Plaintiff CURTIS CORUM

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

#196899

**EXHIBIT 1**

Tina M. Alleguez   (SBN 136562)
MICHELMAN & ROBINSON, LLP
15760 Ventura Blvd., 5th Floor
Encino, CA 91436
Tel: (818) 783-5530
Fax: (818) 783-5507
Attorneys for Plaintiff, Curtis Corum



F I L E D

NOV 0 4 2009

By_____ Dep. Clerk
SAN BERNARDINO COUNTY
SUPERIOR COURT, JOSHUA TREE DISTRICT

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNADINO

CURTIS CORUM, an individual,

    Plaintiff,

v.

PFF BANCORP, INC, a/k/a PFF BANK & TRUST, a Delaware corporation doing business in California; US BANK, N.A., a Minnesota corporation doing business in California; FCI LENDER SERVICES, INC., a California corporation; TRAVIATA LENDING, a Business Entity, form unknown; SOUTHLAND TITLE, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. a Business Entity, form unknown; and DOES 1-100 inclusive,

    Defendants.

Case No.: CIV MS 900 845

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**

1. DECLARATORY RELIEF;
2. INJUNCTIVE RELIEF;
3. DETERMINE NATURE, EXTENT AND VALIDITY OF LIEN;
4. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING;
5. VIOLATIONS OF TILA;
6. VIOLATIONS OF RESPA;
7. VIOLATION OF CALIFORNIA CIVIL CODE § 1918-1921;
8. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(b)(2);
9. VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(b)(4)(B);
10. VIOLATION OF CALIFORNIA CIVIL CODE § 2932.5;
11. FRAUD;
12. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);
13. BREACH OF FIDUCIARY DUTY;
14. UNCONSCIONABILITY;
15. PREDATORY LENDING;
16. CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;
17. QUIET TITLE

1
**FIRST AMENDED COMPLAINT**

## INTRODUCTION

COMES NOW the Plaintiff CURTIS CORUM ("Plaintiff") and alleges as follows:

## PARTIES

1.    At all times relevant herein, Plaintiff was over the age of eighteen (18) and is and was a resident of Yucca Valley, San Bernardino County, State of California.

2.    The real estate that is the subject of this litigation is located at 53910-53928 Ridge Road, Yucca Valley, California 92284 ("Subject Property").

3.    Plaintiff purportedly entered into two (2) separate loan repayment and security agreements on or about March 6, 2006 with Defendant PFF BANK AND TRUST ("PFF") which required Plaintiff to repay a first loan of $750,000.00 to Defendant PFF. Plaintiff's first loan was a purchase money transaction or a 1031 Exchange of a like-investment property for $750,000.00 and was an interest only adjustable rate mortgage ("ARM"). The starting interest rate was 6.125% and fixed for five (5) years and had a margin of 3.375% which was tied to the one-year Libor index. The first rate change had a maximum APR of 8.125% and a life cap of 11.125%. Plaintiff's second loan was for $130,000.00 and was provided by Defendant US BANK ("USB") which had an APR of 7.50% for twenty (20) years. The loan-to-value ratio for the second loan was 65%. Plaintiff's two (2) loans were allegedly secured by the Subject Property.

4.    The purpose of Plaintiff's loans were to purchase the Subject Property, which included a rental and rental income that should have been included in the underwriting analysis. The loans were purportedly secured by the Subject Property.

5.     Plaintiff is informed and believes and thereon alleges that Defendant PFF, is a business entity of unknown form and is now owned by Defendant USB, and was at all relevant times herein, authorized to do business in California. Defendant PFF is the original mortgage lender on Plaintiff's first loan, with an unknown business address.

6.     Plaintiff is informed and believes and thereon alleges that Defendant USB, is a business entity of unknown form and authorized to do business in California. Defendant USB is the original mortgage lender on Plaintiff's second loan, with an unknown business address.

7.     Plaintiff is informed and believes and thereon alleges that Defendant TRAVIATA LENDING ("TRAVIATA") is a business entity of unknown form and authorized to do business in California. Defendant TRAVIATA is the original mortgage broker for Plaintiff's loan, with an unknown business address.

8.     Plaintiff is informed and believes and thereon alleges that Defendant SOUTHLAND TITLE ("SOUTHLAND") is a business entity of unknown form and authorized to do business in California. Defendant SOUTHLAND is the original title company for Plaintiff's loans with a business address of 1555 South Palm Canyon Dr., Palm Springs, CA 92264.

9.     Plaintiff is informed and believes and thereon alleges that Defendant FCI LENDER SERVICES, INC. a/k/a LAWYERS TITLE ("FCI") is a California corporation authorized to do business in California. Defendant FCI is the original trustee and successor trustee for Plaintiff's loan, with the business address of 8180 E. Kaiser Blvd, Anaheim Hills CA 92808.

10.     Plaintiff is informed and believes and thereon alleges that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS ("MERS") is a business entity of unknown form and was and is authorized to do business in California. Defendant MERS is the current mortgage

FIRST AMENDED COMPLAINT

nominee/beneficiary of Plaintiff's loan and has a business address of 1818 Library Street, Suite 300, Reston VA 20190.

11. Defendants named herein as "all persons unknown" claiming any legal or equitable right, title estate, lien or interest in the Subject Property described in this Complaint adverse to Plaintiff's title thereto and as DOES 1 through 100 ("UNKNOWN DEFENDANTS") are unknown to Plaintiff. These UNKNOWN DEFENDANTS, and each of them, claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and his claims, and each of them, constitute a cloud on Plaintiff's title to the Subject Property. Plaintiff is informed and believes and thereon alleges that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

12. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiff is informed and believes and thereon alleges that each of said UNKNOWN DEFENDANTS are and were at all relevant times herein, acting within the scope and consent of the remaining named and unnamed Defendants.

13. Whenever an act or omission of a corporation or business entity is alleged in this Complaint, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the acts or omissions were authorized by corporate managerial officers or directors and that ratified by the officers and directors of the corporation or business entity.

FIRST AMENDED COMPLAINT

14.     Five (5) months after the above-mentioned purchase transaction Plaintiff was approved for a Home Equity Line of Credit from Defendant PFF in the amount of $250,000.00. Pursuant to the approval, the APR was 6.49% for twenty (20) years and was an introductory rate based on the index (WSJ Prime Rate) of 1.760%; the fully indexed rate was "Prime" with a 1.250% margin; maximum rate was 16.172% and paid off the purchase money loan of $130,000.00 (2nd loan) and $120,000.00 cash to Plaintiff.

15.     In order to approve and properly provide a repayment system to Plaintiff with appropriate and fair terms, it was the responsibility of Defendant PFF, as lender, to verify that Plaintiff possessed the ability to repay the credit extended to him. Defendant PFF's departure from the fundamental principles of loan underwriting formed the basis of abusive, deceptive and predatory lending. Defendant PFF lent monies to Plaintiff without determining if Plaintiff could reasonably repay his loans from resources other than the collateral securing his LOAN, and relied on the foreclosure value of Plaintiff's collateral to recover principal, interest and fees. The underwriting of Plaintiff's loans were flawed. Defendant PFF did not conduct a determination of Plaintiff's ability to repay his loans with complete disregard for the Guidance Letters issued by Federal Agencies and federal and state laws and lead to the potential for legal action under many statutes, UDAP laws, and common law principles.

16.     Defendants are subject to and must comply with the Federal Truth In Lending Act ("TILA")[15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act ("RESPA" [12 U.S.C. § 2601 *et.seq.*]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP]; and California Civil Codes §§1918-1921 and1916.7; and Code of Federal Regulations § 226.23(3), among others.

17. The transactions and events which are the subject matter of this Complaint all occurred within the County of San Bernardino, State of California.

18. The Subject Property is located within the County of San Bernardino, State of California.

## FACTUAL ALLEGATIONS

19. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

20. For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they

6

could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

21.   The loan products sold to Plaintiff in the instant case were exactly the kind of loans that have contributed to the national problem. Defendants were aware of the trend and possessed the foresight to advise Plaintiff of the risks and intentionally concealed the negative implications of the loans they were offering Plaintiff. As a result, Plaintiff faces the potential of losing his home to the very entity and/or entities that placed him in that position.

22.   On or about March 6, 2006 Plaintiff allegedly entered into a consumer credit transaction with Defendant PFF by obtaining a $750,000.00 mortgage loan secured by the Subject Property. This note was allegedly secured by a Deed of Trust on the Subject Property in favor of Defendant PFF.

23.   Plaintiff's second loan was for $130,000.00 and was provided by Defendant USB.

24.   Five (5) months after the purchase transaction Plaintiff was approved for a Home Equity Line of Credit, again, from Defendant PFF in the amount of $250,000.00 wherein Plaintiff paid off the second loan of $130,000.00 and retained $120,000.00 in cash.

25.   On each of Plaintiff's loans, a "teaser rate" was utilized to deceive Plaintiff into believing he was building equity and paying down his loan when, in reality, he was paying interest only. Further, Plaintiff could not qualify for the teaser rate had it been a fixed rate. Defendants fraudulently lead Plaintiff into executing loan documents through an ARM loan, which was an inter-temporal transaction on which Plaintiff had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in five (5) years.

26.   Plaintiff paid to Defendants interest rates, fees and/or fees/charges not justified by marketplace economics in place at the time the lien was originated.

FIRST AMENDED COMPLAINT

27. All alternatives to full payments were designed to make sure that Plaintiff would qualify for only a percentage of the full payments. Defendants used this type of option to make sure Plaintiff fit into the product guidelines which they wanted him to fit.

28. Plaintiff's loans contained inappropriate loan programs that were materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which he qualified. This included prime borrowers who were placed into subprime loans, negative or interest only loans that resulted in loan terms whereby Plaintiff could never realistically repay his loans.

29. Further, by Defendant PFF offering a "stated income" loan program to Defendant TRAVIATA and Defendant TRAVIATA falsifying Plaintiff's Loan Application to get Plaintiff approved for a loan, Defendant PFF is subject to a charge of aiding and abetting.

30. The loan program offered to Plaintiff also resulted in the removal of his equity from the Subject Property through repeated refinances, consolidation of short-term debt into long-term debt, negative amortization or interest only loans whereby payments do not reduce principle, high fees and interest rates. Eventually, Plaintiff could not refinance due to lack of equity.

31. Each subsequent Defendant who participated in or had been assigned or transferred rights or holds a position or interest under Plaintiff's loans, including Defendants PFF, USB, TRAVIATA, SOUTHLAND, FCI, MERS and UNKNOWN DEFENDANTS ("Defendants"), failed to perform due diligence in investigating the legal requirements that Plaintiff's loans should have been processed within. As a result, Defendants now hold an interest in Plaintiff's loans that were improperly handled from inception.

32. The terms of Plaintiff's finance transactions with Defendants are not clear, conspicuous nor consistent, are illegal, and include extremely high ratios with respect to Plaintiff's income and liabilities. As orchestrated by Defendants, Plaintiff would have no value in the Subject

Property and would not be able to refinance out of the high rate, or consolidate his loans into one loan, due to lack of equity. Plaintiff was given loans that were inappropriate and more expensive in terms of fees, charges and/or interest rates than alternative financing for which Plaintiff could have qualified. The terms of the loans given to Plaintiff are such that he can never realistically repay them.

33. Defendants' acts of deception violated several statutes and, in essence, created an illegal loan. Further, Plaintiff's loans were underwritten without proper due diligence by Defendants PFF, USB and TRAVIATA as evidenced by their failure to verify Plaintiff's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided Plaintiff's past tax return, or to verify Plaintiff's income or employment.

34. In addition, and unbeknownst to Plaintiff, Defendants PFF, USB and TRAVIATA illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for loans which Defendants PFF, USB and TRAVIATA knew, or should have known, Plaintiff could not qualify for or afford. For example, the underwriter approved Plaintiff's loans based only upon Plaintiff's credit scores and stated income. Had Defendants PFF, USB and TRAVIATA used a more accurate and appropriate factor, such as tax returns and a more determinative level of scrutiny of determining the debt-to-income ratio, Plaintiff would not have qualified for the loans in the first place. Consequently, Defendants PFF, USB and TRAVIATA sold Plaintiff a loan product that they knew, or should have known, could never be able fully paid back by Plaintiff. Defendants PFF, USB and TRAVIATA ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without regard for Plaintiff's rights sold Plaintiff deceptive loan products.

35. Defendants made no determination of Plaintiff's ability to repay the loans, with complete disregard for the Guidance Letters issued by Federal Agencies and federal and state law.

9

1    36.    Defendants, and each of them, did not explain to Plaintiff the workings of the loan

2    transactions, how the rates, finance charges, costs and fees were computed, nor the inherent volatility

3    of the loan products provided.

4    37.    Defendants utilized excessive closing costs/fees that are actionable for treble damages

5    pursuant to 12 U.S.C. § 2607.  Those fees include, but are not limited to, Defendants' PFF, USB and

6    TRAVIATA loan origination fee and a Yield Spread Premium ("YSP"), plus processing fees.

7    Defendants PFF and USB paid Defendant TRAVIATA premiums for increased yields in rates. In the

8    case of an ARM the lenders higher yield is in the margin and, the higher the margin is for Plaintiff,

9    the higher the premium is to the broker, Defendant TRAVIATA.  The purpose of Plaintiff entering

10   into his loans was to eventually own the Subject Property, and to receive a rental income from the

11   property, enabling him to make a living.  Plaintiff's purpose was knowingly and intentionally

1    42.    Plaintiff is informed and believes and therefore alleges that prior to the consummation

2    of his loans, Defendants did not provide him with a California Insurance Disclosure as mandated by

3    law.

4    43.    Plaintiff is informed and believes and thereon alleges that Defendants breached their

5    fiduciary duties to Plaintiff because they knew, or should have known, that Plaintiff would or had a

6    strong likelihood of defaulting on his loans.  Defendants, and each of them, had a fiduciary duty to

7    not place Plaintiff in the loans they sold to him and not place him in harm's way.

8    44.    Plaintiff is informed and believes and thereon alleges that it was in the best interest of

9    Defendants to promote the particular program for which they approved Plaintiff and did so to

10   maximize profits for themselves, devoid of any concern for Plaintiff's financial position or

11   livelihood.

# FIRST CAUSE OF ACTION

## Declaratory Relief

### (Against All Defendants)

48.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49.  An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, California Business and Professions Code, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies.

1     51.     As a result of the Defendants' actions, Plaintiff has suffered damages according to

2 proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force

3 or effect against the Subject Property.

4     52.     Further, Defendants' actions have been willful, knowing and malicious.

5     WHEREFORE, Plaintiff prays for relief as set forth herein.

6

7               **SECOND CAUSE OF ACTION**

8                 **Injunctive Relief**

9               **(Against All Defendants)**

10     53.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

11 fully set forth herein.

12

13     54.     Defendants have commenced a foreclosure action under Plaintiff's note and have

# THIRD CAUSE OF ACTION

## Determine Nature, Extend and Validity of Lien
## under California Commercial Code § 9313

### (Against All Defendants)

57. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. A written instrument that purports to be a Deed of Trust executed by Plaintiff is presently in existence and under Defendants' control and is voidable in that there is no enforceable underlying promissory note for the Deed of Trust to secure.

59. Prior to the commencement of this case, Defendants PFF and USB purportedly received copies of a promissory note from Defendant SOUTHLAND. Plaintiff is informed and

## FOURTH CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

#### (Against All Defendants)

61.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated

additional income due to interest rate increases, and failure to disclose when

negative credit scores were disseminated;

(3) Willfully placed Plaintiff in loans that he did not qualify for, could not afford,

and subjected him to further financial detriment, while providing Defendants

with financial benefits they would not have otherwise enjoyed.

66.    As a result of Defendants' breach of the covenant, Plaintiff has suffered injury and the

threat of losing his property.  Plaintiff has incurred and continues to incur legal fees, including

attorney fees and costs, as well as expenses to right Defendants' wrongdoing.

67.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent

and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish

Defendants and to deter others from engaging in the same behavior.

70.     Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of ARM loans in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for Plaintiff under the same qualifying matrix.

71.     Plaintiff was offered his loans without knowing that it is a negative amortizing loan subject to a loan-to-value greater than that of the original loan-to-value and without knowing that as a loan payment is made, the balance increases, increasing the loan-to-value ratio. Defendants intentionally did not specifically and clearly disclose this information to Plaintiff.

72.     Any and all statutes of limitations relating to disclosures and notices required

76.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## SIXTH CAUSE OF ACTION

### Violation of Real Estate Settlement and Procedures Act (RESPA)

### (Against All Defendants)

77.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     Real Estate Settlement and Procedures Act ("RESPA") applies in the instant action because a lender that regularly extends federally related mortgage loans aggregating more than $1

1    80.    Defendants were aware that in order to earn a YSP the broker would increase the

2    amount of the margin that Plaintiff would pay, which increases his interest rate and the monthly

3    payment. The increase in the monthly payment multiplied over three (3) years will be the YSP and it

4    takes the borrower three (3) years to repay the YSP. Once the three (3) year repayment period has

5    ended, the margin on the interest rate does not drop, instead, the borrower continues to pay at the

6    same interest rate and the lender reaps the benefits of the higher payment.

7

8    81.    Defendants deceptively explained this to Plaintiff by stating that YSP was a "credit

9    for closing costs" or other bait and switch tactics which significantly affected Plaintiff's payment and

10   financial situation.    By allowing Defendant TRAVIATA to earn YSP, Defendants PFF and USB

11   would earn excessive fees over the life of Plaintiff's loans, if carried to maturity.  As a result of the

12   higher interest rate, Defendants PFF, USB and TRAVIATA enjoyed the benefits of unjust

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code §§ 1918.5-1921

### (Against All Defendants)

85. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

86. California Civil Code § 1920(a) states:

"Any mortgage instrument that is made pursuant to the provisions of this chapter shall meet ... Standards for the adjustment of interest rates or monthly payments shall consider factors, which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations."

87. Plaintiff's loans were based only upon a credit score, stated income (without verification) and a belief that the Subject Property would continue to increase in value. Defendants did not conduct any realistic means test regarding Plaintiff's ability to repay his loans.

## EIGHTH CAUSE OF ACTION

### Violation of California Civil Code § 1916.7(b)(2)

#### (Against All Defendants)

4    91.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

7    92.    California Civil Code § 1916.7(b)(2) states:

"Changes in interest and monthly payment shall not occur more often than twice during any annual period and at least six months shall elapse between any two changes. The rate of interest and monthly payments shall not change during the first semiannual period. The amount of any increase in monthly payment shall not exceed 7.5 percent annually."

93.    Option ARM mortgages are tied to indexes that can change monthly and as the index changes, so does the interest rate. Therefore, by the fact that the interest rate can change monthly, the

1     97.    California Civil Code § 1916.7(b)(4)(B) states:

2    "Whenever any monthly installment is less than the amount of interest accrued during the
3 month with respect to which the installment is payable, the borrower shall have the option to
... have the difference added to the principal of the loan as of the due date of the installment
4 and thereafter shall bear interest as part of the principal. In no instance shall the difference
which is added to the principal be an amount which causes the resulting loan-to-value ratio to
5 exceed the loan-to-value ratio at the time of loan origination."

6     98.    Plaintiff's loans are negative amortizing loans and subject to the loan-to-value being
7 greater than the original loan-to-value, and as each minimum payment is made, the balance
8 increases, increasing the loan-to-value ratio, thus violating the above statute.

9     99.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an
10
11 amount not yet ascertained, to be proven at trial.

12     WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as set
13 forth herein.

Defendant MERS to foreclose on the property, and at the same time, assist Defendant PFF in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved Defendant PFF money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

103.   Defendant MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be Defendant MERS corporate officers, it has created a situation whereby the foreclosing agency and Defendant MERS' "designated officer" has a conflict of interest.

104.   Neither Defendant MERS nor the servicer has a beneficial interest in the note, or receives income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of Defendant MERS, the Assignment executed by Defendant MERS'

1    107.   Pursuant to California Civil Code § 2932.5 Defendant MERS has no legal standing to

2 foreclose.

3    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set

4 forth herein.

5

6    **ELEVENTH CAUSE OF ACTION**

7    **Fraud - California Civil Code § 1572**

8    **(Against All Defendants)**

9    108.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

10 fully set forth herein.

11    109.   Defendants intentionally, willfully and wantonly engaged in acts with the purpose of

12 deceiving Plaintiff and inducing him to part with his personal and real property by using a "stated

13

1   the kind of payment, i.e., negative-amortization, that Plaintiff was getting; and d) underwriting

2   Plaintiff based on a negative-amortization payment was "knowingly" selling a mortgage loan that

3   would fail.

4   113.   Plaintiff relied on Defendants' deception, which was the actual and proximate cause

5   of Plaintiff's damages.

6   114.   Plaintiff is entitled to exemplary and punitive damages for Defendants' fraudulent

7   conduct in an amount to be determined at trial. Further, fraudulent concealment voids the contract.

8   WHEREFORE, Plaintiff prays for relief as set forth herein.

9 

10   <u>**TWELFTH CAUSE OF ACTION**</u>

11 

12   **Unfair And Deceptive Business Act Practices (UDAP)**

13   **(Against All Defendants)**

1  by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff

2  of his home, equity, as well as his past and future investment.

3      118.   By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in

4  an amount which is, as yet unascertained.

5      WHEREFORE, Plaintiff prays for relief as set forth herein.

6

7  THIRTEENTH CAUSE OF ACTION

8  Breach of Fiduciary Duty

9  (Against Defendants)

10     119.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

11

12  fully set forth herein.

13     120.   Defendants owed a fiduciary duty to Plaintiff and breached that duty by failing to

1  of losing his property. Such actions are in violation of Defendants' fiduciary responsibilities owed to

2  Plaintiff.

3     WHEREFORE, Plaintiff prays for relief as set forth herein.

4  **FOURTEENTH CAUSE OF ACTION**

5  Unconscionability – Universal Commercial Code-2-3202

6  **(Against All Defendants)**

7

8     124.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

9  fully set forth herein.

10

11    125.   Universal Commercial Code-2-3202 states, in part:

12    "If the court, as a matter of law, finds the contract or any clause of the contract to

13  have been unconscionable at the time it was made the court may refuse to enforce the

   contract, or it may enforce the remainder of the contract without the unconscionable

## FIFTEENTH CAUSE OF ACTION

### Predatory Lending; California Business and Professions Code § 17200

(Against All Defendants)

127.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.   The Office of Comptroller of the Currency defines "Predatory Lending" as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.

129.   Acts undertaken by Defendants in Plaintiff's acquisition of his loans are consistent with the Office of the Comptroller's definition of "Predatory Lending" and include the fact that Plaintiff's loans were marketed in a way that fails to fully disclose all material terms and includes

1    negative amortization or interest only loans whereby payments are not reducing principle, high fees

2    and interest rates. Eventually, Plaintiff cannot refinance due to lack of equity resulting in equity

3    stripping.

4         134.    Plaintiff's loans are negative amortization loans, where he is under the belief that the

5    payment and rate are actually such that the balance on his loans can increase monthly.

6

7         135.    Plaintiff's loans are based on a Loan Application that was inappropriate for him in

8    that it was a "no income stated" application, although Plaintiff was employed and could have

9    provided pay stubs, W-2s and tax returns.

10        136.    Plaintiff's loans were underwritten without due diligence by Defendants originating

11   his loans, as Defendants did not conduct any realistic means tests for determining Plaintiff's ability

12   to repay his loans and made no request or requirement of documentation verifying Plaintiff's income,

13

1  them, claim an interest in the Subject Property adverse to Plaintiff. However, as a result of the

2  conduct more fully described in the preceding allegations, the claims of Defendants are without any

3  rights whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the

4  Subject Property.

5

6  140.   Plaintiff therefore seeks a declaration that title to the Subject Property is vested in

7  Plaintiff alone and that Defendants herein, and each of them, be declared to have no estate, right, title

8  or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined

9  from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiff.

10

11  WHEREFORE, Plaintiff prays for relief as set forth herein.

12  **PRAYER FOR RELIEF**

13  WHEREFORE Plaintiff will ask for the following for each Cause of Action sustained:

13. Any other and further relief that the Court considers just and proper.

Dated: November 4, 2009

MICHELMAN & ROBINSON, LLP

Tina M. Alleguez, Esq.
Attorneys for Plaintiff
CURTIS CORUM

@002

1  Tina M. Alleguez, Esq. (SBN 136562)
2  Teresa M. Wainman, Esq. (SBN 143825)
   MICHELMAN & ROBINSON, LLP
3  15760 Ventura Blvd., 5th Floor
4  Encino, CA 91436
   Tel: (818) 783-5530
5  Fax: (818) 783-5507

6  Attorneys for Plaintiff, CURTIS CORUM

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF RIVERSIDE

10

11  CURTIS CORUM, an individual,

12          Plaintiff,

F I L E D

NOV 2 5 2009

By _____ Dep. Clerk
SAN BERNARDINO COUNTY
SUPERIOR COURT, JOSHUA TREE DISTRICT

Case No:  CIV MS 900845

~~PROPOSED~~ ORDER RE TEMPORARY
RESTRAINING ORDER AND ORDER TO

## ORDER TO SHOW CAUSE

Upon good cause showing, based upon the First Amended Complaint filed in this action and the declarations submitted in support of this request for temporary relief, all parties herein are ordered to appear on December 23, 2009 at 8:30 a.m. in Department M4 of this Court located at 6527 White Feather Road, Joshua Tree, California, 92252, for hearing on Plaintiff's motion to show cause why a preliminary injunction should not be ordered restraining and enjoining Defendars from selling Plaintiff Curtis Corum's real property located at 53910-53928 Ridge Road, Yucca Valley, California 92284 ("Property") and from taking any action against Plaintiff's rightful ownership in the Property during the pendency of this action seeking to quiet title, seeking injunctive relief and other equitable remedies, pending trial of this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

Any Reply papers to the Notice of Motion and Motion for Preliminary Injunction shall be filed and served by facsimile, if agreed upon by the parties, or otherwise U.S. Mail, no later than December 16, 2009.

Dated: November 25, 2009

By: _John P. Vander Fee_
JUDGE OF THE SUPERIOR COURT